By the Court.—Freedman, J.
This is an appeal from a final judgment entered upon the report of a referee, and in connection with it a review is asked of the interlocutory judgment by which the sale was set aside and reference was ordered, and of several orders denying various motions of the defendants. No special reference to the orders is necessary because their review is asked only for the purpose of putting beyond question the *420 whole case before the general term. Nor is there any tangible ground for disturbing the interlocutory judgment. Indeed no serious contention was made on that branch of the case. The result of the reference, however, presents very grave questions, and in order to determine them properly it is necessary to constantly keep in mind the case as made and established by the interlocutory judgment. ,
From 1862 to August, 1876, the parties to this action were co-partners in business, with equal interests as to profits and losses, and as such co-partners they Constituted the firm, and did business under the firm name of Chas. White & Co. From 1862 to August, 1876, the parties were co-partners as above stated; the business consisted of buying live hogs in Chicago, and slaughtering them and selling here ; the plaintiff, at the times in question, was in charge of the business at Chicago where he resided, and he had no personal knowledge of, or connection with, the actual transactions of the firm in New York, except so far as he was informed by his partners, and by the books of account which were kept at New York, to which he had access. The defendants “ were in exclusive charge of the business of said firm in the city of New York,” receiving the animals shipped, superintending the slaughtering “ and attending to the making of contracts of sale and selling the products of said business ; ” “ the financial transactions and the firm’s credits were under the immediate control of defendants.” In respect to the business done in New York, plaintiff wras compelled to rely, and did rely, upon the good faith of defendants and their representations. In August, 1876, the plaintiff expressed his dissatisfaction with the conduct of the business in New York, and particularly with the loss of an account of one John J. Bate, amounting to $44,735.74, and the result was that the firm was dissolved ■by consent of all parties on August 4,1876, and that the plaintiff made a sale of all his interest in the firm property to the two defendants.
*421 As to said sale of plaintiff’s interest to the defendants, the following findings of fact made by the learned trial judge and incorporated in the interlocutory judgment are highly important, viz.:
“XVIII. That on the 4th day of August, 1876, the credit to the plaintiff on the books of the firm of Charles White & Co. was $70,818.40.
“XIX. At the time of the sale or transfer by. the plaintiffs to defendants of his (the plaintiff’s) interest in the property and assets of Charles White & Co., given in evidence on the trial of this cause, the nominal value of the interest of the plaintiff was $70,818.40, and it appeared on the books at that sum, which last sum was the difference in favor of the said plaintiff existing on the books of Charles White & Co. between the items which had theretofore been charged in account to the plaintiff, and the items which had theretofore been credited in account to him.
“ XX. That in the negotiations had between the parties to this action at the time of the proposal of the plaintiff to sell out his interest in the said partnership, a balance sheet of the books of account of said firm, showing its assets and accounts, was prepared and used; that it was upon the consideration of the values of certain of the assets of the firm appearing on said balance sheet, consisting of interest in real estate and of certain book accounts, that in the negotiations of said sale the plaintiff agreed to receive, in place of the full amount of his credit of $70,818.40, $27,000 in cash and notes and one-third of certain real estate belonging to said firm, which said one-third was taken at the valuation of $30,000.”
This consideration of $57,000 was received by the defendant together with a guaranty of indemnity by the defendants against all firm debts and liabilities.
In February, 1881, the plaintiff brought the present action to have the said sale or transfer set aside on the ground of fraud. The fraud specified in the complaint *422 and set forth in the findings and interlocutory judgment, was a fraud by the defendant Eeed in a certain series of transactions had in the year 1872 and 1873, more than three years prior to the dissolution. This alleged fraud was of the nature following: One John J. Bate, in February, 1872, was indebted to the firm in the amount of $24,722.71 for merchandise theretofore sold him by the firm. He was then insolvent. In June, 1872, the defendant Eeed, as charged in the complaint, when Bate’s insolvency was known to him, made a secret agreement with Bate, whereby he, Eeed, was, in effect, to continue sales by his firm to Bate of firm merchandise, in the profits of which sales Eeed was to have an individual interest. The agreement was concealed by Eeed, not only from the plaintiff, but also from the defendant, Charles White, with the fraudulent intent, as charged, on the part of Eeed, of making for himself individually a separate profit from his wrongful use of the name and credit of the firm. That Eeed did make any profit was not proved. The result of the subsequent transactions thereafter had by Eeed in the name of the firm under this secret agreement was an increase in the indebtedness of Bate to the firm in the amount of $20,013.13, making the entire indebtedness of Bate to the firm $44,735.74. The plaintiff did, indeed, charge, in general terms, that Eeed had committed other frauds similar to this one in the Bate transaction. But no other was alleged specifically. Nor was any other proved.
The judgment asked by the complaint was, an accounting by Eeed, of all his dealings with Bate under the secret agreement, and for his profits in any similar fraudulent transactions with other parties. The plaintiff also presented a general prayer for relief, that the sale be set aside, that he have an injunction, and a receivership of all the firm property. But the only specific ground alleged in the complaint for any recovery was this alleged fraud in the transactions with Bate.
In this connection the following finding of fact made *423 by the learned trial judge and incorporated in the interlocutory judgment, is very material, viz.:
“ XXI. That the material thing for the plaintiff to be informed of was the relation of Reed to Bate, because it was upon that relation and its nature that the value of the claim against Bate depended.”
The failure to disclose such relation constitutes, therefore, the only ground which entitles the plaintiff to any relief whatever, and all the conclusions of law made by the learned trial judge and the interlocutory judgment granted by him, hinge upon such failure. The conclusions of law referred to are as follows, viz.:
“ 1. That the plaintiff is entitled to have the said sale by him of his interest in said firm and business on the 4th day of August, 1876, set aside and declared void.
“2. That the defendants account to the plaintiff in respect to the partnership assets and liabilities of said firm of Charles White & Co.
“ 3. That there should be a reference to take such accounting, and to take and state the accounts as. between the parties to this action.
“4. That in such accounting the defendant Reed should be charged with the values of the several deliveries of merchandise made by the firm of Charles White & Co. to John J. Bate on and after June 15, 1872, and interest thereon from the dates of deliveries to the date of accounting in this action and be credited with all payments by John J. Bate to Charles White & Co. after June 15, 1872, and interest thereon from time of payment to date of account in this action.
“Upon the accounting the defendants are not, nor is either of them, chargeable with the indebtedness of $24,722.71 existing in favor of Charles White & Co. against John J. Bate on the 24th day of May, 1872, nor with any part of such indebtedness.
“ On such accounting the plaintiff should be charged with all sums of money withdrawn by him from the firm of Charles White & Co. in August, 1876, or paid to him *424 by that firm, and charged also with the value of all property withdrawn by or transferred to him by said firm or by the defendants at that time.
“ 5. That the plaintiff, George W. White, recover against the defendant, Horatio Reed, his costs in this action.”
The interlocutory judgment, after reciting all the facts found and the foregoing conclusions of law, is as follows, viz.:
“ Now after hearing Mr. George H. Adams for the plaintiff, and Mr. F. N. Bangs for the defendants, it is adjudged and decreed as follows:
“ I. That the said sale by the plaintiff of his interest in said firm and business on the 4th day of August, 1876, be and the same is hereby set aside and declared void.
“ II. That the defendants account to the plaintiff for the disposition by them of the partnership assets of said firm of Charles White & Co., which were in their possession on said 4th day of August, 1876, and also that an accounting be had between the parties to this action in respect to their several interests in said assets or the proceeds of them, or in the amounts for which defendants may be chargeable in their disposition of them.
“ III. That to that end Hamilton Cole, Esq., counselor at law, residing in the city of New York, is hereby appointed sole referee to take and state an account of the assets and liabilities of the said firm of Charles White & Co., existing on the 4th day of August, 1876 ; that said referee do make an inventory of such liabilities and assets existing on that day ; and that on such accounting the defendants do file with the said referee an account and inventory of all such assets existing on that day and of the liabilities of said firm on that day.
“ That the referee is directed to ascertain and determine what were the obligations of defendants to the plaintiff in disposing of the partnership assets, or any of them, after the execution of the transfer of the plaintiff’s interest which has been by this decree set aside, and the *425 amounts with which the defendants may be chargeable by reason of such disposition.
’ “ That in such accounting the defendant Eeed be charged with the values of the several deliveries of merchandise made by the firm of Charles White & Co. to John J. Bate on and after June 15, 1872, and interest thereon from the dates of deliveries to the date of accounting and be credited with all payments by John J. Bate to Charles White & Co. after June 15, 1872, and interest thereon from the time of payment to date of account in this action.
“ That upon the accounting, the defendants are not nor is either of them to be charged with the indebtedness of f24,722.71, existing in favor of Charles White & Co. against John J. Bate, on the 24th day of May, 1872, nor with any part of such indebtedness.
“ That on such accounting the plaintiff shall be charged with all sums of money withdrawn by him from the firm of Charles White & Co., in August 1876, or paid to him by that firm, and charged also with the value of all property withdrawn by' or transferred to him by said firm or by defendants at that time.
“ That the referee state an account between the parties to this action in respect of said partnership assets and also partnership* liabilities and of such amounts, if any, in which each may be liable or interested by reason of the premises; and that said referee ascertain and report to this court whether any of the property of said firm remains unconverted into cash and whether either of the parties is indebted to the other by reason of property appropriated or cash withdrawn or received, and what is the amount of such indebtedness; that the plaintiff have leave to surcharge and falsify the account so to be filed by said defendants; that upon the coming in and confirmation of the report of the referee either party may bring this cause to a hearing at a special term of this court on due notice and move for judgment thereon, and meanwhile either party or the referee has leave *426 to apply to the court for further directions at the foot of this judgment. Nothing in this judgment contained shall prevent either party from preferring before the referee nor prevent the referee from passing upon when preferred, any claim by either party to credit in his own favor or to debit against any other party in addition to the specific sums herein above particularly directed to be charged or credited.”
Upon the accounting had in pursuance of this interlocutory judgment, the referee awarded to the plaintiff one third of the profits of the business carried on by the defendants for nearly eight years after the dissolution agreed upon, viz.: from August 4,1876, to June 4,1884, together with interest on plaintiff’s nominal capital of $70,818.40, as it stood on the books of the firm at the time of the dissolution, less the sum of $27,000, received by him in checks and notes at the time of the dissolution, the whole resulting in a judgment of over $100,000, which the referee gave against White as well as Reed.
I fail to see how this result can be sustained. True, no discrimination can be made between the defendants, because the referee, upon what must be deemed to be sufficient evidence, has made the following finding of fact, viz.:
“ Twentieth. The defendants have produced and filed before the referee from time to time statements of accounts purporting to show the assets of the said firm as of July 1, 1876, and purporting to show the disposition of the same by the defendants. In said accounts the defendants have not called upon the referee to determine their rights as between the defendants themselves, but have stated and assume that their rights and obligations should be consolidated and said account prepared only to show the rights and obligations of the defendants to-, gether as against the plaintiff.”
But even as against Reed the judgment goes far beyond what under all the circumstances is equitable, for even where there has been a long continued wrongful *427 use of trust moneys by a party having full knowledge, equity will not give more than an equitable compensation for the moneys wrongfully used.
The judgment is sought to be upheld upon what is assumed to have been decided by the court of appeals in King v. Leighton, 100 JST. Y. 388, but on a careful examination that case does not support plaintiff’s contention. True, in the course of his reasoning, Ktjgeb, Ch. J., who delivered the opinion of the court, refers to thg doctrine laid down by text writers and enforced in reported cases, to the effect that surviving or solvent partners have a right to the possession and control of the assets only for the purpose of satisfying the liabilities of the firm and turning the effects into money in the manner most advantageous to the interest of all concerned, and that if they delay closing up the affairs of the firm and paying off the share of the deceased or bankrupt partner, they are not only liable to an accounting with respect to the completed business and as to all profits thereafter made upon the unfinished contracts or enterprises of the firm, but, at the option of the representatives of the deceased or bankrupt member, may be held further liable for any profits realized from new business entered into and carried on with the assets of the firm. But the decision actually made established only that the plaintiff was entitled to share in the profits on the unfinished contracts held by the firm at the time of the dissolution.
Now, from the proposition which is well established, that in a proper case a liability may be imposed for profits realized from new business, it does not follow that such liability must or should be imposed in every case. The fact is that the doctrine relating to a possible liability for profits realized from new business, is the outgrowth of the decisions of numerous cases. A great many have been cited by the counsel for the respective parties and extensive references were made to the statements of text writers upon the subject. All these citations and references have received due attention, but a *428 notice of them in detail would answer no useful purpose here. The most convenient reference which is sufficient for all present purposes, is to Lindley on Partnership, 4th ed., pp. 979 and 980, where the result from the authorities is summarized as follows, viz.:
“ Assuming that a person is entitled to an account of profits made by the use of his property in trade, it is obviously often extremely difficult to ascertain these profits. To take the ordinary case of surviving partners continuing to trade with the capital of a deceased partner, great difficulty will be found in arriving at the share of profits to which the executors of the deceased are entitled. It is very easy to say they can be calculated by the rule of three—as the whole capital is to the whole profits—but this assumes that the profits in question have been made by the capital only. Profits, and very large profits, may be made by skill and an extensive connection, with little or no capital, and even if there be capital, the profits may be attributable less to it than to other matters and it may be impossible to determine with any precision the extent to which the capital has contributed to the realization of the profits obtained. Special inquiries on this subject, therefore, are almost always necessary, and if it can be shown that, having regard to the nature of the business or other circumstances, the profits which have been made cannot be justly attributed to the use of the capital or assets of the late partner, his prima facie right to share such profits will be effectually rebutted. The extent of the liability to account for subsequent profits was elaborately discussed by the late Y. C. Wigbam in Willett«. Blanford, and the conclusion arrived at by him was that no general rule could be laid down upon the subject and that every case must depend on its own circumstances. The nature of the trade, the manner of carrying it on, the capital employed, the state of the account between the late partnership and the deceased partner, at the time of his death, and the conduct of the parties after his death, may materially affect *429 the rights of the parties. This conclusion of the vice-chancellor was entirely in accordance with previous decisions-, and has been approved by subsequent judges, and in conformity therewith several cases have since been decided, in which profits acquired after the death of a partner were held to belong wholly to those by whose labor they had been made,” etc.
And on p. 990 the same author says: “The law upon the subject under consideration is still in an unsettled state. Undoubtedly a person ought not to be permitted to retain, for his own use, gains acquired by the unlawful employment of another’s property ; and it would certainly not be conducive to justice if there were no power to compel a discovery of the amount of the gains so made, and payment of the amount by the wrong-doer. At the same time, owing to the extreme difficulty of taking an account of subsequent profits, so far as they are attributable only to one particular source, the tendency of the courts in modern times appears to be rather in favor of not exercising than of exercising the power alluded to, except in cases of gross fraud or breach of trust.”
The true rule to be extracted from all the authorities upon the point now under consideration, may be summed up to be as follows:
Profits may be allowed in cases of the wrongful use in new enterprises by surviving or continuing partners of the capital of the deceased or retired partner whenever it is made to appear that the use of such capital was a breach of trust or a gross fraud upon the deceased or retired partner, and that the allowance of such profits is under all the circumstances equitable. But whenever upon the special facts of a case, such allowance is not equitable, the accounting must be confined to the completed business of the firm at the time of the dissolution, and to such profits as were made after the dissolution upon the unfinished contracts or enterprises of the firm, and in addition the surviving or continuing partners are to be charged with *430 interest upon the deceased or retired partner’s share of the surplus existing after the discharge of the partnership liabilities. Moreover they must bear all the losses sustained by or on account of new enterprises.
On the application of this rule to the facts of the case at bar, it will be found that the essential elements which would warrant a recovery of profits on new business, are wanting in this case.
The dissolution was a voluntary one, and all the parties to it had abundant means. There is no room for the inference or suggestion that the plaintiff agreed to accept less that he would otherwise have done, because the defendants were, not of sufficient financial ability to respond to him for his full share. There was an estimate made of plaintiff’s share and in the making of that estimate there was no fraud except the failure of the defendants to disclose Beed’s relations to Bate. But Seed’s transactions with Bate had taken place and had been completed and brought to an end years before the dissolution of the firm, and the balance due from Bate as it stood upon the books, had constituted a dead loss in fact for years. According to the estimate as made, and which was made upon the basis that the indebtedness of Bate was wholly uncollectible, the interest of the plaintiff in the assets of the firm was fixed at $57,000. Of this sum the plaintiff took about $27,000 in money and notes bearing interest, which were subsequently paid, and about $30,000, by taking a one third interest in certain real estate, which interest was taken at an agreed valuation of $30,000. In the arrangement culminating in the taking of such interest, there was not a particle of fraud or deception. That the plaintiff failed to call for a deed and that years thereafter he re-transferred said interest to the defendants at a less figure, can make no difference as long as he received his share of the income from said real estate for the period during which he was the equitable owner. Upon the branch of the case now under consideration the plaintiff, for the reasons stated, must *431 therefore be held to have received both the $30,000 and the $27,000, and as a necessary corollary he must be deemed to have withdrawn all his capital as it was then and there estimated, and, although the defendants remained liable to him on account of the Bate affair, none of plaintiff’s capital remained in fact in defendants’ business. It therefore cannot be held that his capital contributed to the making of profits in the subsequent new transactions. But the plaintiff not only withdrew all his capital, strictly so called, but he also took away all of his time, skill and labor which he had theretofore given to the business of the firm in Chicago. He consequently took elsewhere his chances of profits on his property and his chances of reward for his services, and thereafter he never shared any of the burdens of defendants’ business. Nor did he ever offer to share such burdens or to allow the defendants to participate in some way in the profits of his own business. But even if the amount which the plaintiff should have received over and above the $57,000, were treated as so much capital left by him in the hands of the defendants, there is no evidence in the case showing that it in any wise contributed in some substantial way to the making of the profits on the new business subsequently done by the defendants.
From the examination so far made it sufficiently appears that the allowance to the plaintiff of profits on the new business was erroneous. His claim to profits should have been confined to such as were made by the defendants upon the unfinished contracts and enterprises existing at the time of the dissolution. His claim to interest will be hereinafter referred to.
This conclusion has been reached without reference to the limitations placed upon the power of the referee by the interlocutory judgment. The concluding part of that judgment, it is true, is an amplification of the powers specifically conferred, but even with that I cannot construe the said judgment as a grant of power to award profits on the new business. In view of the con *432 elusion already announced, however, this question has lost its importance.
On the point relating to the determination of plaintiff’s interest in the firm assets as such, the interlocutory judgment, taken as a whole, is perfectly clear and consistent. It directed the referee to ascertain and determine the value of such interest as of the day. of the dissolution, and this meant the actual value. Upon such actual value which remained unpaid, the plaintiff is entitled to interest, but not on the nominal value. It was therefore another error of the referee to start in all his calculations with the assumption that the plaintiff left in the firm a capital of $70,818.40. This was nominally so, so far as the state of the books immediately preceding the dissolution was concerned. In point of fact the plaintiff should have been immediately charged with the $57,000 received at the time of the dissolution as hereinbefore stated. To deduct only $27,000 and then give him interest on the balance without considering at the same time the element of bad assets of which there were some outside of the Bate account, and yet charge the defendants with interest from the same time on the amount due by them on account of the Bate transaction, as the referee did, involved in part a charge for double interest, and upon the whole awarded to the plaintiff so much more for interest on his share than he is entitled to, that the final result arrived at by the referee cannot be sustained.
. The errors already noticed call for a reversal of the judgment. The points of counsel also refer to some other matters which have not been noticed. It is deemed unnecessary to refer to them specifically because they are of minor importance than the questions discussed at length and are not likely to lead to an erroneous result hereafter. It should be understood, however, that no opinion concerning them is intimated.
The judgment appealed from should be reversed upon the facts as well as the law, with costs to the appellants *433 to abide the event, the order of reference vacated, and a new reference ordered to determine in conformity with the views herein expressed the matters required by the interlocutory judgment to be determined.
Ingraham, J., concurred.